Armond M. Jackson, Bar No. 281547
ajackson@jacksonapc.com
Andrea M. Fernandez-Jackson 295924
afernandez@jacksonapc.com
**JACKSON LAW, APC**
2 Venture Plaza, Suite 240
Irvine, CA 92618
Telephone:  949.281.6857
Fax No.:      949.777.6218

Attorney for Plaintiff Nico Carlos

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICO CARLOS, as individuals and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART ASSOCIATES, INC. a Delaware corporation, and DOES 1-50, inclusive,<br><br>Defendant. | Case No.  5:21-CV-00294<br><br>Assigned for all Purposes to Honorable Andre Birotte Jr<br>Magistrate Judge: Kenly Kiya Kato<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY**<br><br>**Action Filed**:  December 8, 2020<br>**Removal Date:**  February 22, 2021<br>**Trial Date**           June 7, 2022<br><br>**Date:  December 3, 2021**<br>**Time: 10:00 a.m.**<br>**Location: Telephonic or via Zoom** |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................3

II. STATEMENT OF CASE AND FACTS............................................................4

   1. *Carlos Action* ..................................................................................................4

   2. *Haro* Case ......................................................................................................7

III. ARGUMENT .....................................................................................................7

   1. Governing Law ................................................................................................7

   2. Application of the First-to-File Rule ..............................................................8

      a. This Action is the First Filed and Subsumes *Haro* .....................................8

      b. This Action Represents the Same Non-Exempt Employees as *Haro*, in Addition to the State of California......................................................................11

      c. This Case Includes the Same Issues as *Haro* in Addition to the PAGA Claims and the Reimbursement Claims............................................................12

   3. CMAX Factors do not Favor a Stay ..............................................................12

   4. Not Even Equity Favors of a Stay .................................................................14

      a. Defendant Failed in its Duty to Notify the Court and Plaintiff of *Haro*.....14

      b. A Stay Would Not Create Judicial Economy.............................................15

VI. CONCLUSION................................................................................................15

TABLE OF AUTHORITIES

**Federal Cases**

*Bradshaw v. City of L.A.*,
  No. 2:19-CV-06661-VAP-JC, 2020 WL 2065007 (C.D. Cal. Mar. 23, 2020).....14

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
  611 F.2d 738 (9th Cir. 1979)..................................................................................8

*CMAX, Inc. v. Hall*, 300 F.2d 265(9th Cir. 1962) ....................................................8

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
  787 F.3d 1237 (9th Cir. 2015)................................................................................9

*Molander v. Google LLC*, 473 F. Supp. 3d 1013 (9th Cir. 2020) ............................8

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ......................8

**State Cases**

*Iskanian v. CLS Transportation L.A., LLC*, 59 Cal. 4th 348 (2014) .......................12

*Shive v. Barrow,* 88 Cal. App. 2d 838 (1948)………………………………….15

**Rules**

Local Rule, rule 83-1.4.1 ........................................................................................14

## I. INTRODUCTION

Simply put, a stay in this action makes no sense. As a practical matter, if the Court were to order a stay as to the overlapping claims related to the pre-shift Covid screenings, much of the same exact litigation and discovery would nonetheless still proceed in this case, maybe concurrently, because of the corresponding claims brought pursuant the California Private Attorney General Act ("PAGA") that were not alleged in *Haro*.[1] This case is more expansive and subsumes the later filed *Haro* action.

As a matter of equity, Defendant's bemoans of "wasteful duplicative litigation," having to "defend the same claims in two different forums and be subject to duplicative discovery…" and for the sake of "judicial economy" should be discarded, completely. Apparently, despite knowing that *Haro* contained "substantially similar claims," Defendant did not notify this Court or Plaintiff of *Haro*, a duty imposed by Local Rule 83-1.4.

In fact, Defendant had been aware of both cases for almost eight months without giving any notice whatsoever. And during those eight months, the parties engaged in extensive meet and confers regarding the pleadings, fully briefed a dispositive motion, engaged in the first round of discovery, including discovery relating to the pre-shift Covid screenings, attended the Rule 26 (f) conference, dually drafted and submitted the joint statement, met and conferred on discovery issues, and in short, have already expended much of the parties' and Court's resources. Had Defendant intended on seeking a stay, it should have months ago.

---

[1] The lead class counsel appears to be Texas attorneys appearing in the Eastern District by way of *pro hac vice*, which may explain why the corresponding PAGA claims were not filed.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY**
- 3

Notwithstanding, Defendant's creative recitation, this is the first filed action, has more expansive claims, including the correlating PAGA claims, even if the FLSA claims were added later, as Defendant points out both actions cover the same exact period. This case appears to be much further ahead in litigation, even as to FLSA claims.

Currently the parties have filed a stipulated request for protective order and are briefing plaintiff's motion to compel discovery regarding his second set, related to the pre-shift Covid screening policies and *Belaire-West* notice process. Defendant is vague on what discovery has happened in *Haro*, conspicuously leaving out the date in which the discovery was actually propounded, and whether it was ever responded to. May 19, 2021, is when the *Haro* Court issued its scheduling order and that was the very last thing ever filed in *Haro,* i.e. no protective order or *Belaire-West* notice, so it is difficult to believe any significant discovery has taken place. And as to concerns regarding opt-ins, this case too has significant number of opt-ins, which is 138, even more than *Haro*. (ECF. No. 60)

There is a jury trial less than eight months away, and a settlement conference in four, the parties in this action have engaged in significant litigation. The Court is well within its discretion to overrule this motion.

## II. STATEMENT OF CASE AND FACTS

**1.** *Carlos Action*

Plaintiff was employed as a non-exempt employee by Walmart from November 19, 2019 to September 21, 2020, at the Walmart Supercenter in Rialto, California. (ECF No. 4, Ex. A)

On December 8, 2020, he filed this putative wage and hour action in California Superior Court, for the County of San Bernadino on behalf of himself

and all current and former non-exempt employees of Walmart in California during the period of December 8, 2016 to judgment. (ECF No. 4, Ex. A)

The Original Complaint alleged Walmart had subjected him to (a) pre-shift screening prior to clocking in and (b) unlawful deductions from the use of Money Network Checks/Pay Cards, resulting in (1) minimum and (2) overtime wage violations, and (3) wage statement violations, (4) unlawful deductions, (5) payment of all owed wages at termination, and (6) engaged in unfair competition; plaintiff also alleged (7) failure to reimburse for necessary business expenses for cellphone usage.  He brought all of these claims pursuant to California labor law. (Id.)

On February 22, 2021, after meeting and conferring, Defendant filed a signed stipulation to extending its time to respond, as well as a Removal Notice of this Action to this Court.  (ECF No. 14, p. 22)

On March 22, 2021, pursuant to a stipulation, Plaintiff filed his First Amended Complaint, adding the corresponding claims for civil penalties pursuant the California Attorney General Action ("PAGA").  (ECF No. 18)

On April 9, 2021, Plaintiff filed his Second Amended Complaint.  (ECF No. 20, 22-23) On April 23, 2021, Defendant filed a partial motion to dismiss the Second Amended Complaint (ECF No 24.)

On May 7, 2021, pursuant to a stipulation Plaintiff filed his Third Amended Complaint. (ECF No. 26.) And a Fourth Amended Complaint on June 4, 2021 (ECF 34.)  Defendant renewed its motion to dismiss and the parties fully briefed the issues. (ECF No. 35.)

On June 25, 2021, the parties submitted their Rule 26 (f) discovery plan. (ECF No. 36).  On July 8, 2021, The Court ordered the Parties to participate in Alternative Dispute Resolution not later than March 11, 2022, and ordered a jury trial set on June 7, 2022. (*Id.*)

On July 8, 2021, Plaintiff served his first set of paper discovery, seeking discovery regarding "the process in which [Defendant's] nonexempt employees had their medical inspections including temperature checks…" (See Declaration of Armond M. Jackson in Support of Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Stay, ("Jackson Dec."), ¶ 3, Ex. A.) (To which Defendant responded on August 9, 2021, and after meeting and conferring supplementally responded on October 26, 2021). (*Id*.)

On August 13, 2021, the Court granted Defendant's motion to dismiss as to Plaintiff's claims relating to the unlawful deduction theory, as well as the wage statement claims as an impermissible double recovery. (ECF No. 44, p.12) The Court ordered a stay relating to the suitable seating claims and granted plaintiff leave to amend and file his Fifth Amended Complaint.  (*Id*.)

On September 3, 2021, Plaintiff filed his Fifth Amended Complaint.  (ECF 46.)   Plaintiff maintained his claims for the pre-shift covid screening under California law, including (1) minimum and (2) overtime wage violations and (3) failure to pay wages at termination; as well as his (4) failure to pay necessary business expenses; and the (5) corresponding PAGA claims. (ECF No. 46, pgs. 1-2) Plaintiff also alleged FLSA claims for the pre-shift covid inspections. (*Id*.)

On September 7, 2021, Plaintiff sent Local Rule, rule 37-1 correspondence to Defendant regarding insufficient discovery responses to plaintiff's set one. (Jackson Dec. ¶ 6, Ex. D)

On September 17, 2021, in response, and for the first time, Defendant's Counsel, Mr. Knopp notified Plaintiff of the *Haro* action:

> We write pursuant to Local Rule 7-3 regarding plaintiff's first, second, third, sixth, and seventh causes of action, and the fifth cause of action to the extent it is derivative of these claims (collectively, the "wage claims").  As a result

> of the Court's ruling on Walmart's motion to dismiss, the wage claims are based solely on plaintiff's allegation that he and other Walmart employees are owed wages for time spent on COVID-19 screening. Identical claims are already being litigated in the Eastern District of California, in *Haro v. Walmart Inc.*

(Jackson Dec. ¶ 6, Ex. D)

Defendant has not given plaintiff nor this Court notice as required by L.R. 83.

### 2. *Haro* Case

As stated in Defendant's motion, *Haro* was filed in the Eastern District on February 23, 2021, asserting the same California State law arising out of the pre-shift covid screenings as the present action, including 1) minimum wages 2) overtime wages 3) wage statements (which this Court has struck from this action as seeking impermissible double recovery) and 4) timely wages at termination. However, *Haro* did not alleged the corresponding PAGA claims, but brought FLSA claims. (*Haro et al. v. Walmart*, 1:21-cv-00239-DAD-SKO DKT No 1) The lead attorneys on the *Haro* case appear to be Texas attorneys not licensed to practice law in California and only admitted to appear in the District Court for the Eastern District of California *pro hac vice*. (RJN, Ex. 1, DKT Nos. 7 and 8.)

That case is being heard in front of Honorable Sheila K. Oberto. The last item filed in that action was on May 19, 2021, when the Judge Oberto, issued a scheduling order, setting the deadline for plaintiff to file a motion for class certification on March 19, 2022. (RJN, Ex. 1 at Dkt No. 20.)

On September 17, 2021, Plaintiff's counsel contacted the two Texas attorneys informed them of this action and sent them a copy of the complaint. (Jackson Dec. ¶ 7, Ex. E)

### III. ARGUMENT

### 1. Governing Law

The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The rule is meant to "avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments," and "should not be disregarded lightly." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) "'It provides that where substantially identical actions are proceeding in different courts, the court of the later-filed action should defer to the jurisdiction of the court of the first-filed action by either dismissing, staying, or transferring the later-filed suit.'" *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1017 (9th Cir. 2020)

Defendant curiously tries to dodge the first-to-file analysis (presumably because it favors overruling this motion) and instead cites to *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). But even, under the *CMAX* factors: (1) the possible damage that may result to the non-moving from the granting of a stay, (2) the hardship or inequity which a moving party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. See *CMAX*, 300 F.2d at 268, a stay is not appropriate.

**2. Application of the First-to-File Rule**

Courts consider three factors in determining whether the first-to-file rule applies: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. See *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). In this case, all three factors weigh in favor of applying the first-to-file rule, and overruling this motion.

**a. This Action is the First Filed and Subsumes *Haro***

Here, this action is the first filed. (See ECF. No. 1; Plaintiff's Request for Judicial Notice ("RJN"), Ex. 1) It was initiated in California State Court and removed to this Court prior to *Haro* being filed. (See ECF. No. 1)

It is ironic that Defendant argues "Indeed, the Court already stayed Carlos' suitable seating claims in deference to overlapping lawsuits, under the more-stringent Colorado River doctrine." Dkt. No. 44 at 10-12 (Colorado River requires 'exceptional circumstances')" (Defendant's Memo in Support of Stay, p. 4, lns1-4.)  Aside from the *Colorado River* doctrine not applying here, in that motion, Defendant made the inverse argument, that, because *Carlos'* action was later filed as to the suitable seating claims in the "interest of wise judicial administration, the Court should stay Plaintiff's suitable seating claim pending resolution of two earlier filed suitable seating actions." (ECF No. 35, p. 26, lns, 21-22.)  But now attempts to turn that argument on its head in order to persuade the Court to stay this case so that the later filed action can proceed.

This action is indeed the first filed action and appears to be further along in litigation.  Defendant states that this action should nonetheless be stayed arguing:

> *Haro* is unquestionably farther along than this case. Walmart answered the *Haro* complaint in April (five months earlier than in this case), and the parties opened discovery in May (two months earlier than in this case). Slowik Decl. ¶ 5; Dkt. No. 51.  Additionally, the *Haro* plaintiffs must move for class certification by March 18, 2022, while there is currently no timetable for *Carlos* to move for class certification. Slowik Decl. ¶ 4 (Haro Dkt. 20 (scheduling order)). Perhaps more significantly, while *Carlos* only recently expanded his case to match the scope of Haro by adding a nationwide FLSA claim, the Haro plaintiffs have been pursuing nationwide claims since February 2021. Slowik Decl. ¶ 2, Ex. A ("Haro Compl."). More than 100 individuals have already joined *Haro* as opt-in plaintiffs, while no one has done so here. Id. ¶ 3 Ex. B (Haro Dkt 15)

(Defendant's memorandum at pgs. 9-10, lns 20-28, 1-2.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY**
- 9

The claim that *Haro* is "unquestionably further along" in litigation is false. There is nothing in Defendant's motion supporting this, and it is indeed questionable. Defendant cites to "Slowik Decl. ¶ 5; Dkt. No. 51" But there is nothing in that paragraph or that entire declaration to support a finding *Haro* is much further along in litigation. The last document that had been filed in *Haro* was the Court's scheduling order on May 19, 2021, two months after the initial complaint was filed. (RJN, Ex. 1) Nothing filed since. *Haro* only has 20 court filings, *Carlos* has 60. (RJN, Exs. 1 and 2) Given Walmart requires a protective order and *Belaire-West* notice process, but no documents have been filed indicating either in *Haro,* it is difficult to believe there has been significant discovery exchanged in that Action.

Defendant's argument that "Walmart answered the *Haro* complaint in April (five months earlier than in this case), and the parties opened discovery in May (two months earlier than in this case) is equally misleading. Walmart was served, and appeared in this action, met and conferred regarding time to respond, filed a joint stipulation extending Defendant's time, Defendant filed its motion to remove and stipulated to allowing Plaintiff bring his corresponding PAGA action prior to ever filing its answer in *Haro*. (See ECF. Nos. 1-16; RJN, Ex. 1) As to Defendant's argument that discovery was opened on May 19 in *Haro* and July 8 in this case (that same date plaintiff sent his first set of discovery) is not persuasive, especially given the lack of evidence of what has been accomplished in *Haro*.

Additionally, Defendant's argument about *Haro's* deadline for class certification being on March 18, 2022, is also nonconsequential. It is completely speculative whether one would ever get filed in that case. As in this case a jury trial has been set, and as soon as Defendant complies with discovery, which

plaintiff has current discovery motions pending (ECF Nos. 54 and 54-8), Plaintiff can file his motion for certification which should be before *Haro's* deadline.

Lastly Defendant's argument concerning opt-ins for the FLSA claims is mooted by the recent filing. (ECF No. 60) Because this was the first to be filed, and appears to be further along in litigation, this factor supports the Court overruling this motion.

### b. This Action Represents the Same Non-Exempt Employees as *Haro*, in Addition to the State of California.

As Defendant helpfully points out "Both *Carlos* and the *Haro* plaintiffs seek to represent the same groups of non-exempt Walmart employees. The respective complaints in each action define the putative class and collective action claims as including hourly Walmart associates who underwent the COVID-19 screening in California and in the United States since three or four years before the complaints were filed.to the state and FLSA claims regarding the Covid 19 screening, the parties seem to represent the same class of employees for the same exact time period. (Defendants memo at p. 4, lns 12-16, citing to *Haro* Compl. ¶¶ 11-12; *Carlos* Compl. ¶ 1 (Dkt No. 1-1)

However, Defendant completely finesses over the fact that this case, unlike *Haro,* also represents the State of California. PAGA actions are not a dispute between private parties but a dispute between the employer and the State, Mr. Carlos is acting as "'the proxy or agent of the state's labor law enforcement agencies'" and "'represent the same legal right and interest'" of these agencies. *Iskanian v. CLS Transportation L.A., LLC*, 59 Cal. 4th 348, 386-87 (2014). And even the Court theoretically stayed the overlapping claims in *Carlos*, the PAGA allegations should still move forward, requiring the same exact litigation for the same exact class period. In other words, a stay in this action would make no sense..

### c. This Case Includes the Same Issues as *Haro* in Addition to the PAGA Claims and the Reimbursement Claims.

Again, also as Defendant acknowledges, this case includes all of the same issues regarding the pre-shift Covid screening as *Haro*. (Defendants memo at p. 4, lns 12-16, citing to *Haro* Compl. ¶¶ 11-12; *Carlos* Compl. ¶ 1 (Dkt No. 1-1) However, this case is more expansive as it also involves issues surrounding PAGA penalties as to the Covid screening, in addition to claims involving business expenses for cellphone usage. This element favors overruling this motion.

Defendant makes the argument: "A stay would cause no such harm here because the *Haro* plaintiffs will continue to pursue the claims at issue." (Defendants memo at p. 4, lns. 9-10.) This statement is false given that *Haro* failed to allege the PAGA claims. And to that end, the bulk of the claims at issue involve California Labor Laws. The lead attorneys in *Haro* are not members of the California Bar (*Haro et al. v. Walmart*, 1:21-cv-00239-DAD-SKO DKT Nos. 7 and 8), and it is, or should be, common knowledge that California has a vast labor code scheme much different from Texas, and is constantly changing. It would be reasonable to find that Mr. Carlos' interests, along with putative class members', could certainly be harmed.

Because *Carlos* would address all the claims at issue in *Haro* but not the inverse, a stay in *Carlos* is inappropriate.

### 3. CMAX Factors do not Favor a Stay

The *CMAX* factors are: (1) the possible damage that may result to the non-moving from the granting of a stay, (2) the hardship or inequity which a moving party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. See *CMAX*, 300 F.2d at 268.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR STAY
- 12

As to the second factor, Defendant's decry of hardship regarding duplicative litigations does not add up, because they will still have to engage in much of the same litigation for the PAGA claims, and possibly even for the business expense claims. Where as if this case went forward, all of the claims in *Haro* would be resolved.

Regarding the third element Defendant makes the argument:

> Perhaps more significantly, while *Carlos* only recently expanded his case to match the scope of *Haro* by adding a nationwide FLSA claim, the *Haro* plaintiffs have been pursuing nationwide claims since February already joined *Haro* as opt-in plaintiffs, while no one has done so here. Id. ¶ 3 Ex. B (Haro Dkt 15). If *Carlos* is not stayed, the opt-in plaintiffs in *Haro* will need to decide whether to opt-in to this identical lawsuit—an unnecessary complication that a partial stay would avoid. Judicial economy does not favor having these plaintiffs join two lawsuits to seek the same relief. (Slowik Decl. ¶ 2, Ex. A ("Haro Compl.")). More than 100 individuals have

(Defendant's memo at pp. 9-10, lns. 25-28, 1-5.)

There are 138 opt-ins in *Carlos* (ECF No. 60, Jackson Decl. ¶ 10, Ex. F) So the "unnecessary complication" will not be avoided by a stay. The argument that *Haro* has been pursuing its claims since February is unpersuasive because Defendant has not met its burden in showing that *Haro* is further along. In fact, as stated above, despite adding the FLSA claims later than *Haro, Carlos* seems to be much further along in the evidence gathering phase. At to that point, Defendant interestingly argues "[l]ikewise, in *Bradshaw v. City of L.A*., No. 2:19-CV-06661-VAP-JC, 2020 WL 2065007 (C.D. Cal. Mar. 23, 2020), the court stayed a class action in deference to an overlapping class action in which 'burdensome fact gathering' had already taken place. Id. at *5" (Defendant's memo at p. 9, lns. 13-16) which actually supports Plaintiff's position in overruling of Defendant's motion. And as stated above, a stay in this case would result in piecemeal

litigations and would complicate the issues regarding the Covid Screening, because of *Carlos*' corresponding PAGA claims.

Regarding the first factor: "the possible damage that may result to the non-moving from the granting of a stay," as respectfully implied above, there are a variety of possible damages that could result should the fate of Plaintiff(s)' California labor code claims lie in the palms of attorneys who are not licensed to practice in California.

Under both the first-to-file rule and the *CMAX* factors, the Defendant has failed to meet its burden in showing as stay is warranted.

### 4. Not Even Equity Favors of a Stay

Equitable principles do not favor a stay for two independent reasons, first, a stay would in not create judicial economy, rather cause piecemeal litigations, complicate the issues and there will nonetheless be duplicative litigation. Walmart, at some point, is going to have to litigate the correlating PAGA claims that involve the same issues and discovery. Secondly, any hardship of wasted resources of which Defendant complains, is of its own doing.

### a. Defendant Failed in its Duty to Notify the Court and Plaintiff of *Haro*.

Pursuant to Local Rule, rule 83-1.4.1, a soon as Defendant became aware of *Haro* it had a duty to file a "Notice of Pendency of Other Actions or Proceedings" with the original complaint or petition filed in this Court. "The duty imposed by L.R. 83-1.4 continues throughout the time an action is before this Court. Defendant failed in its Duty.

In Defendant's September 17, 2021, in which *Haro* was mentioned for the first time, this case had already been extensively been litigated and much of the Court's and parties' resources had been utilized. Defendant has responded to two (2) sets of discovery in this case, met and conferred on it, engaged in motion

practice, have met and conferred and filed a stipulation for a protective order, has propounded its own discovery on Mr. Carlos. (ECF Nos. 1-60) Had the Defendant wanted to save resources, it should have notified the Court and Plaintiff much sooner that there was another action, at that point the parties and Court could have avoided investing resources. Defendant can just wait to see which case seems to be moving along more aggressively and then seek a stay in that action and decry "duplicative litigation" and "wasted resources." "[N]o principle is more firmly settled than that equity will not come to the aid of one who, through his own delay and own fault, has lost the remedy which the law has provided." *Shive v. Barrow,* 88 Cal. App. 2d 838, 844 (1948)

### b. A Stay Would Not Create Judicial Economy

As stated throughout the opposition, it makes very little sense to stay this action as to the Covid screening. This Case is further along, the parties and Court have already expended resources, and the issues and scope of discovery would nonetheless move forward because of the corresponding PAGA claims. If Defendant genuinely cared about preservation of judicial resources it should request an order that *Haro* be moved to this Court and stayed pending the resolution of *Carlos,* of which would resolve all the claims in *Haro,* obliviating using up two District Court's resources.

## VI. CONCLUSION.

Because this action was filed first, more expansive, will resolve all the issues in *Haro* (but not the inverse)*,* appears to be much further along in discovery, has a trial in less than 8 months, Defendant's motion should be denied.

Dated: November 12, 2021      Jackson Law, APC
By:/s/ Armond M. Jackson
Armond M. Jackson
Attorneys for Nico Carlos