**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
JONATHAN P. SLOWIK (SBN 287635)
LAURA L. VAUGHN (SBN 329470)
gknopp@akingump.com
jpslowik@akingump.com
vaughnl@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:   310-229-1000
Facsimile:   310-229-1001

Attorneys for Defendant
Wal-Mart Associates, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICO CARLOS, as individuals and on behalf of others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware corporation, and DOES 1-50, inclusive,<br><br>  Defendant. | Case No. 5:21-cv-00294-AB-KK<br><br>**DEFENDANT WAL-MART ASSOCIATES, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL STAY**<br><br>Date:   December 3, 2021<br>Time:   10:00 a.m.<br>Courtroom   7B<br>  Telephonic or via Zoom<br><br>Judge:   Hon. André Birotte, Jr.<br><br>Date Action Filed: December 8, 2020<br>Date of Removal   February 22, 2021 |

## I. INTRODUCTION

As Wal-Mart Associates, Inc. ("Walmart") established in its motion, the *Haro* case in the Eastern District of California asserts the same COVID-19 screening claims at issue here, Walmart would be prejudiced if forced to defend the same claims in two suits, and the orderly course of justice requires that the claims proceed in one court or the other, not both. Carlos does not dispute any of these points, which heavily favor a stay of the COVID-19 screening claims.

In fact, Carlos makes almost no effort to address the relevant standard other than to argue (despite all evidence to the contrary) that his case is further along than *Haro*. However, as Carlos cannot dispute, *Haro* has reached virtually every objective milestone months ahead of this case. The Court therefore should stay the COVID-19 screening claims pending a resolution in *Haro*—just as it did when it stayed Carlos's suitable seating claims in deference to other, more developed lawsuits.

Carlos's only meaningful opposition to the motion is to argue that *Haro* should be stayed instead under the first-filed rule, because he filed his complaint two months earlier. However, that rule has no bearing on this motion, which seeks a stay under the Court's inherent authority. In any event, *Carlos* is the "first filed" case only in a very technical sense, because *Haro* was the first case to specifically plead wage claims based on COVID-19 screening and the first case to assert nationwide claims under the Fair Labor Standards Act ("FLSA"). Indeed, Carlos only recently expanded his case to match the scope of *Haro*. The first-filed rule, therefore, is no basis for Carlos to avoid a stay.

## II. ARGUMENT

### A. All The Relevant Factors Favor A Stay.

As Walmart explained, the Court must weigh three factors in considering a stay under its inherent authority: (1) the possible damage caused by granting a stay; (2) the hardship or inequity the movant may suffer from being required to move forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of

issues, proof, and questions of law that could result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Carlos does not meaningfully address these factors, let alone explain how they could support moving forward with the COVID-19 screening claims while identical claims proceed in *Haro*. Nor does he even acknowledge the many cases Walmart cited granting stays in similar circumstances. The Court should grant Walmart's motion for these reasons alone.

1.  A Stay Would Not Harm Carlos Or The Putative Classes.

The first factor asks whether a stay will result in "irreparable injury and a miscarriage of justice." *CMAX*, 300 F.2d at 268. Carlos does not dispute that, if the Court stays the COVID-19 screening claims here, the *Haro* plaintiffs would continue to litigate those claims to his benefit and the benefit of the classes he seeks to represent. *See* Motion at 4-5. His only response is to insinuate that the *Haro* attorneys may be inadequate to pursue the state law claims because the lead counsel is licensed in Texas.[1] *E.g.*, Opp. at 14 (Dkt. No. 61). Carlos offers no support for his speculation that the *Haro* lawyers are inadequate simply because of their state of licensure. Even if this were a valid concern, it would be assuaged by the facts that (1) the *Haro* court admitted the Texas counsel *pro hac vice* (without expressing any reservations); (2) the *Haro* plaintiffs also have counsel of record who is licensed in California; and, (3) at the class certification stage, the *Haro* court will evaluate whether class counsel is adequate. Fed. R. Civ. P. 23(g). In sum, Carlos's insinuation about the *Haro* counsel falls far short of showing that a stay would cause "irreparable injury and a miscarriage of justice." *CMAX*, 300 F.2d at 268.

2.  Walmart Would Experience Undue Burden In The Absence Of A Stay.

As Walmart explained, it will be unduly burdened without a stay because it will need to litigate identical claims in two separate forums and thus undergo duplicative

---

[1] Carlos does not suggest that they are inadequate to prosecute the FLSA claim.

discovery and motion practice, which would create the risk of inconsistent rulings. Motion at 5-7. Carlos cannot seriously dispute that defending duplicative claims would be an undue burden for Walmart.

First, Carlos erroneously argues that Walmart will have to defend the COVID-19 screening claims in this action regardless of any stay because they are included in his claim for civil penalties under the Private Attorney's General Act ("PAGA"), whereas *Haro* does not assert a PAGA claim. Opp. at 13. This argument ignores the fact that Walmart requests a stay of the PAGA claim as well, to the extent it concerns the alleged failure to pay for COVID-19 screenings. Motion at 10. Because the PAGA claim merely seeks an additional remedy based on the same alleged Labor Code violations, the resolution of the COVID-19 screening claims in *Haro* likely will dispose of the duplicative PAGA claim too. *Marquez v. Toll Glob. Forwarding (USA) Inc.,* No. 219CV02667ODWASX, 2021 WL 2808691 (C.D. Cal. July 6, 2021) at *3-5 (holding that res judicata barred PAGA claims based on same alleged Labor Code violations as in earlier-filed class action). In short, Carlos is simply wrong in arguing that duplicative litigation would occur even without a stay.

Second, Carlos obliquely suggests that his expense reimbursement claims will require Walmart to duplicate efforts in *Haro*. Opp. at 13 (Dkt. No. 61) (Walmart will "engage in much of the same litigation . . . possibly even for the business expense claims"). However, he does not begin to explain why. Indeed, it is unclear what overlap might possibly emerge between the COVID-19 screening claims and the reimbursement claims, which allege that Walmart required employees to use their personal cell phones to assist customers. Dkt. No. 46 ¶ 15. Moreover, if the expense claim truly were duplicative of the COVID-19 screening claims, then staying those claims would be justified as well.

Finally, Carlos argues that, if Walmart "genuinely cared" about avoiding duplicative litigation, it would have filed its motion many months earlier and thus avoided unnecessary time and expense. Opp. at 15 (Dkt. No. 61). Putting aside

Carlos's baseless speculation about Walmart's motives, this argument distorts the record. As shown below, Walmart acted promptly. It informed Carlos of *Haro* and raised the prospect of a stay just a few months after Carlos amended his complaint to specifically allege claims based on COVID-19 screening and within two weeks of Carlos expanding his lawsuit to match the nationwide scope of *Haro*. Jackson Decl. ¶ 6, Ex. D. Moreover, the parties have expended *no* time and resources litigating the COVID-19 screening claims specifically, except in addressing Carlos's motion to compel responses to a mere four discovery requests, which Carlos rushed to file *after* Walmart made clear that it intended to move for a stay.[2] Dkt. No. 54. In short, any suggestion that the duplicative litigation that Walmart seeks to avoid already has occurred is simply false.[3]

In sum, Walmart unquestionably will avoid the inequity of duplicative litigation by having the COVID-19 screening claims proceed in one court instead of two. Thus, the second factor unquestionably favors a stay.

### 3. The Orderly Course Of Justice Favors A Stay.

Walmart explained that a stay would advance the orderly course of justice because the resolution of *Haro* will "simplify[] issues, proof, and questions of law" in *Carlos* and likely dispose of the claims entirely. *CMAX*, 300 F.2d at 268; *see* Motion at 7-8. Carlos does not argue otherwise. Instead, he argues that his case is further along than *Haro*, so a stay should issue in *Haro* instead. However, it is simply not true that *Haro* is lagging behind. As Walmart has shown, *Haro* has consistently reached litigation milestones several months before this case. Motion at 9-10. None of Carlos's responses is valid.

---

[2] At Carlos's request, Walmart waited to file this motion until he could file his motion to compel. Dkt. No. 54-3, Exs. A, C.

[3] Carlos notes that, despite informing him of *Haro*, Walmart did not file a "Notice of Pendency of Other Actions" pursuant to Local Rule 83-1.4.1. Opp. at 14-15 (Dkt. No. 61). Walmart has now done so. Dkt. No. 62. Carlos does not explain why he did not file the notice himself. Nor does he cite any authority suggesting that the timing of this notice can have any impact on a party's right to seek a stay of a duplicative lawsuit.

First, Carlos notes that there have been more court filings in this case than in *Haro*. However, the difference in those raw numbers is largely due to a number of filings in this case pertaining to the initial pleadings—*e.g.*, removal, multiple motions to dismiss, six iterations of the complaint (and related stipulations and orders)—and even five notices of deficiencies in electronic filings. Carlos RJN, Ex. 2. This difference is meaningless in terms of measuring the progress of each case. Indeed, a comparison of the two dockets shows that *Haro* is several months ahead of this case, because the documents that have been filed in both cases (e.g., answer to the complaint, Rule 26(f) report, FLSA consent forms) were consistently filed first in *Haro*. *Id.*

Second, Carlos notes that, as of November 12, 2021, individuals have now consented to join his lawsuit as FLSA opt-in plaintiffs, which purportedly avoids Walmart's concern about the "unnecessary complication" that people would need to decide whether to opt into multiple lawsuits to seek the same relief. Opp. at 13. On the contrary, the addition of opt-in plaintiffs in this case *exacerbates* this problem. After Walmart conferred about this motion in September 2021, Carlos gathered more than 100 consent forms in October and November 2021, and filed them mere hours before opposing this motion. Jackson Decl., Ex. F. Notably, two of these opt-in plaintiffs signed consent forms in *Haro* nearly a year ago. *See Haro* Dkt. No. 15-1 at 11, 41 (consents signed by "Rhonda Brown" and "Kyle Ham"); Jackson Decl., Dkt. No. 61-1 at 103, 225 (same). This active competition for opt-in plaintiffs does not serve the interests of any party. Moreover, Carlos's recent submission of FLSA consent forms is yet another indication that his lawsuit is several months behind *Haro*, in which the plaintiffs filed the first batch of consent forms seven months ago. Carlos RJN, Ex. 1. (Dkt. No. 61-2).

Third, Carlos notes that this case is scheduled for trial before *Haro*. Opp. at 10. However, the trial date is not an indication of which case is *currently* more advanced, but rather is merely a prediction that *Carlos* eventually would catch and pass *Haro* if the screening claims proceed in both cases. This speculation is simply irrelevant.

In sum, *Haro* has reached every objective milestone months ahead of *Carlos* and is unquestionably further along. Accordingly, staying the COVID-19 screening claims here pending a resolution of the claims in *Haro* will advance "the orderly course of justice." *CMAX*, 300 F.2d at 268. Thus, this factor also favors a stay.

### B. The First-Filed Rule Is Inapposite.

Because the test under the Court's inherent authority overwhelmingly favors a stay, Carlos primarily contends that, if Walmart had sought a stay under a *different* doctrine (the first-filed rule), the Court would have denied the motion. Opp. at 8-10. This argument is inapposite because Walmart is not seeking a stay under that rule. Moreover, Carlos does not contend—nor could he—that it is improper for the Court to consider a stay under its inherent authority. Simply put, regardless of how the first-filed rule would apply, the Court may "control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX*, 300 F.2d at 268.

In any event, the first-filed doctrine does not favor an earlier-filed case if, as here, the second case raised the *overlapping claims* sooner. For example, in *Halo Elecs., Inc. v. Bel Fuse Inc.*, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008), the court did not give an earlier-filed suit preference because the subsequent lawsuit involved different claims than those originally pled in the first action. Similarly, in *NIC Ins. Co. v. Simon Galasso & Frantz, LPC*, 2007 WL 627879, at *6 (E.D. Mich. Feb. 26, 2007), the first-filed rule did not apply because the plaintiff in the earlier-filed lawsuit amended his complaint to match the scope of a later-filed lawsuit.

That is precisely the case here. Although Carlos commenced this action before the *Haro* plaintiffs filed theirs, he never pled a claim for unpaid wages based on "COVID-19" or "coronavirus" screenings until his Fourth Amended Complaint, which he filed four months *after* the start of *Haro*.[4] Dkt No. 34. Further, not until his Fifth

---

[4] Carlos's original complaint vaguely alleged claims for "pre-shift inspections" without any explanation and said nothing about COVID-19 screening. Dkt No. 1-1. This ambiguous allegation could refer to any number of pre-shift activities, which

Amended Complaint did Carlos significantly expand the scope of his lawsuit to include the same nationwide FLSA claim that *Haro* had been pursuing for six months. Dkt. No. 46. Because *Haro* was the first case to specifically assert a wage claim based on the COVID-19 screening theory, the first-filed rule is no help to Carlos. *See Z-Line Designs, Inc. v. Bell'O Int'l, LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003) (noting that courts may stay the earlier-filed case "if the balance of convenience weighs in favor of the later-filed action"); *see also Scholl v. Mnuchin*, 483 F. Supp. 3d 822, 828 (N.D. Cal. 2020) (declining to apply first-filed rule where two cases were filed in close proximity and neither had clearly made more progress); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1159 (S.D.N.Y. 1996) (similar).

### III.  CONCLUSION

For the foregoing reasons, the Court should stay the First, Second, Third, Sixth, and Seventh Causes of Action, and the Fifth Cause of Action to the extent it is based on alleged failure to pay for time spent in COVID-19 screening, pending resolution of the COVID-19 screening claims in *Haro*.

Dated: November 19, 2021          AKIN GUMP STRAUSS HAUER & FELD LLP

By _____/s/ Gregory W. Knopp_____
Gregory W. Knopp
Attorneys for Defendant
Wal-Mart Associates, Inc.

---

presumably is why Carlos later amended his complaint. Thus, the Fourth Amended Complaint alleges for the first time that "[t]hese pre-shift inspections were for Covid-19 checks," which "required questions and temperature checks." Dkt. No. 34 ¶ 14. Carlos should not be considered the first to file a claim that was not ascertainable from the original pleading. *See* Jackson Decl. ¶ 7, Ex. E (email from *Haro* counsel Don J. Foty to Armond Jackson) (observing that Carlos had apparently filed a lawsuit and then "scrambl[ed] to find some theory to pursue") (Dkt. No. 61-1).