UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICO CARLOS, as individuals and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware corporation, and DOES 1-50 inclusive,<br><br>Defendants. | Case No. 5:21-CV-00294-AB (KKx)<br><br>**ORDER GRANTING DEFENDANT WAL-MART ASSOCIATES, INC.'S MOTION FOR PARTIAL STAY** |

Before the Court is Defendant Wal-Mart Associates, Inc.'s ("Defendant") Motion for Partial Stay ("Motion"). (Dkt. No. 53.) Plaintiff Nico Carlos ("Plaintiff") filed an opposition ("Opp'n"). (Dkt. No. 61.) Defendant filed a reply ("Reply"). (Dkt. No. 65.) After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Partial Stay.

I. BACKGROUND

    A.    **The *Haro* Action**

On February 23, 2021, Plaintiffs Amado Haro and Rochelle Ortega filed a putative class and collective action in the United States District Court for the Eastern

1.

District of California against Defendant ("*Haro* Action"). (Declaration of Jonathan Slowik ("Slowik Decl.") ¶ 2, Ex. A.) In the *Haro* Action, Plaintiffs allege that Defendant failed to compensate them for time spent undergoing COVID-19 screenings at the beginning of their shifts. (*Id.* ¶ 2, Ex. A ("*Haro* Compl.") at ¶ 1.) Specifically, Plaintiffs assert the following causes of action: (1) failure to pay all wages in violation of California Labor Code; (2) failure to pay overtime in violation of California Labor Code; (3) failure to provide itemized wage statements in violation of California Labor Code; (4) failure to provide wages upon separation of employment in violation of California Labor Code; (5) unfair competition in violation of California Business and Professions Code; and (6) failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"). (*Id.*) The *Haro* Action asserts the state law claims on behalf of "all current and former hourly paid employees of Walmart who underwent a COVID-19 screening during at least one week in California" from February 23, 2017 to the present. (*Id.* ¶ 12.) The *Haro* Action asserts the FLSA claim on behalf of "all current and former hourly paid employees of Walmart [in the United States] who underwent a COVID-19 screening during at least one week" from February 23, 2018 to the present. (*Id.* ¶ 11.) The *Haro* Action does not allege any violation of the Private Attorney General Act ("PAGA"). Plaintiffs in the *Haro* Action are represented by David W. Hodges, Don J. Forty and William M. Hogg from Hodges & Forty, LLP, and Matthew S. Parmet from Parmet PC. (*See generally Haro* Action Dkt.) Mr. Hodges and Mr. Forty have been admitted to practice Pro Hac Vice. (*Haro* Action Dkt. Nos. 6, 8.)

On April 23, 2021, Defendant filed an Answer in the *Haro* Action. (*Haro* Action Dkt. No. 15.) On April 27, 2021, 111 individuals filed consent forms to opt-in to the FLSA collective action. (Slowik Decl. ¶ 3, Ex. B.) Defendant alleges that the parties in the *Haro* Action commenced propounding discovery in May 2021. (*Id.* ¶¶ 7-8, Exs. E, F.)

On May 19, 2021, the Court issued its Scheduling Order setting the applicable pre-trial and trial deadlines governing the *Haro* Action. (*Haro* Action Dkt. No. 20.) Pursuant to the Scheduling Order, class certification discovery must be completed by February 18, 2022, and Plaintiffs' motion for class certification must be filed by March 18, 2022. (*Id.*) A hearing for the motion for class certification is set for June 1, 2022. (*Id.*)

### B. The *Carlos* Action

On December 8, 2020, Plaintiff, a former non-exempt employee of Defendant, filed this putative class and representative action in San Bernardino County Superior Court. (Dkt. No. 1, Ex. A.) In the initial Complaint, Plaintiff asserted the following causes of action under California law: (1) failure to pay overtime; (2) failure to pay minimum wage; (3) failure to pay timely wages upon termination; (4) failure to provide accurate itemized wages statements; (5) failure to pay timely wages; (6) unlawful discount and deductions of entitled wages; and (7) unfair business practices. (*Id.*) The Complaint alleged that Defendant failed to compensate employees who were "subjected to pre-shift inspections off-the-clock work before being allowed to clock in." (*Id.* at ¶ 15.) There is no mention of COVID-19 screenings as a theory of liability in the Complaint. (*See generally* Dkt. No. 1, Ex. A.) On February 22, 2021, Defendant removed the action to this Court. (Dkt. No. 1.)

On March 22, 2021, Plaintiff filed his First Amended Complaint ("FAC"). (Dkt. No. 18.) The FAC added two causes of action for failure to reimburse necessary expenses and PAGA penalties. (*Id.*) Thereafter, on April 9, 2021, Plaintiff filed his Second Amended Complaint ("SAC") asserting the same causes of action as in the FAC. (Dkt. No. 23.) The only mention of COVID-19 in both the FAC and SAC is related to the cause of action for failure to reimburse necessary expenses based on employees having to purchase face masks. (FAC at ¶¶ 18, 92, 99; SAC at ¶¶ 18, 92, 99). There is no mention of COVID-19 screenings as a theory of liability in the FAC or SAC.

On May 7, 2021, Plaintiff filed his Third Amended Complaint ("TAC"). (Dkt. No. 26.) The TAC asserted the following causes of action: (1) failure to pay overtime; (2) failure to pay minimum wage; (3) failure to pay timely wages upon termination; (4) failure to provide accurate itemized wages statements; (5) failure to pay timely wages; (6) failure to reimburse necessary expenses; (7) unfair business practices; and (8) PAGA penalties. (*Id.*) Once again, the only mention of COVID-19 in the TAC is related to the cause of action for failure to reimburse necessary expenses based on employees having to purchase face masks. (*Id.* at ¶¶ 18, 74, 81.)

On June 4, 2021, Plaintiff filed a Fourth Amended Complaint. (Dkt. No. 34.) The Fourth Amended Complaint alleged the same causes of action as the TAC, except for the failure to pay timely wages claim. (*Id.*) In addition, for the first time, the Fourth Amended Complaint asserted COVID-19 screenings as a theory of liability. (*Id.* at ¶ 14.)

In July 2021, the parties commenced propounding discovery. (Slowik Decl. ¶ 5.) On July 8, 2021, the Court issued its Scheduling Order setting the applicable pre-trial and trial deadlines governing the matter. (Dkt. No. 40.) Relevant here, the non-expert discovery cut-off is January 21, 2022; the last day to hear motions is February 25, 2022; and jury trial is scheduled for June 7, 2022. (*Id.*)

On August 13, 2021, the Court granted Defendant's motion to dismiss the Fourth Amended Complaint as to several of Plaintiff's claims relating to the unlawful deduction theory. (Dkt. No. 44.) The Court also stayed the portion of the PAGA claim relating to the suitable seating claims pending resolution of the two state court cases, *Mark Chen v. Walmart Inc.*, 20STCV43043 ("*Chen*"), and *Michael Jacobi et al. v. Walmart Inc.*, RG20082737 ("*Jacobi*"). (*Id.*)

On September 3, 2021, Plaintiff filed his Fifth Amended Complaint. (Dkt. No. 46.) The Fifth Amended Complaint asserts the following causes of action: (1) failure to pay overtime; (2) failure to pay minimum wage; (3) failure to pay timely wages upon termination; (4) failure to reimburse necessary expenses; (5) PAGA penalties;

(6) violation of 29 U.S.C. § 206; and (7) violation of 29 U.S.C. § 207. The Fifth Amended Complaint alleges that Defendant failed to compensate employees for time spent undergoing COVID-19 screenings at the beginning of their shifts, and alleged claims for failure to pay minimum and overtime wages, failure to provide accurate wage statements, and failure to pay final wages upon termination based on that allegation. (*Id.* ¶¶ 41-57.) The Fifth Amended Complaint asserts nationwide FLSA claims based on this same theory of liability. (*Id.* ¶¶ 13-14, 26.) Plaintiff's failure to reimburse necessary business expenses claim is based upon the allegations that employees had to purchase face masks to protect themselves from COVID-19 transmissions and had use their personal cell phones, including downloading mobile applications, in order to assist customers. (*Id.* at ¶¶ 15-16, 21-22, 34-35, 54-63.)

On September 17, 2021, Defendant filed its Answer to the Fifth Amended Complaint. (Dkt. No. 51.)

On November 5, 2021, Defendant filed the instant motion seeking to stay the first, second, third, sixth, and seventh causes of action in their entirety pending the resolution of the COVID-19 screening claims in the *Haro* Action. (Dkt. No. 53.) Similarly, Defendant seeks to stay the fifth cause of action to the extent it is based on the alleged failure to pay for time spent in COVID-19 screenings. (*Id.*) Defendant does not move to stay the fourth cause of action for failure to reimburse necessary business expenses. (*Id.* at 1:19-20.)

On November 12, 2021, Plaintiff also filed a Consent-to-Join Form identifying 138 individuals who have opted-in to Plaintiff's FLSA collective action. (Dkt. No. 60.) On November 19, 2021, Plaintiff filed a Supplemental Consent-to-Join Form identifying an additional 67 individuals who have opted-in to Plaintiff's FLSA collective action. (Dkt. No. 64.)

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant a stay, a court may weigh the following: "the possible damage which may result from the granting of a stay; the hardship or inequity which a party may suffer in being required to go forward; and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-255).

### III. DISCUSSION

#### A. First-Filed Rule

"The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). "The first-to-file rule *may* be applied 'when a complaint involving the same parties and issues has already been filed in another district.'" *Id.* at 1240 (internal citation omitted). The first-to-file rule is "not a rigid or inflexible rule to be mechanically applied" and a district court enjoys an "ample degree of discretion" in applying the rule. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (internal citation omitted).

Here, Plaintiff asserts that the first-to-file rule should apply and under this rule a stay is unwarranted. However, the first-to-file rule is not the doctrine best suited to this case. Although the initial complaint in this matter was filed before the *Haro* Action, the Fourth Amended Complaint, which contains the theory of liability that overlaps with the *Haro* Action, was not filed until four months after the *Haro* Action commenced. Similarly, Plaintiff's Fifth Amended Complaint, which contains the FLSA claim that overlaps with the FLSA claim in the *Haro* Action, was not filed until seven months after the *Haro* Action commenced. *See Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW, 2008 WL 1991094, at *2-3 (N.D. Cal. May 5, 2008) (holding that although the New Jersey case was filed prior to the filing of the

California case, the California case was the first-to-file since the overlapping claims arose through an amendment in the New Jersey case and did not relate back to the original complaint of the New Jersey case). Because neither Plaintiff's initial complaint, FAC, SAC, nor TAC contained the theory of liability or cause of action that currently overlap with the *Haro* Action, the Court will analyze Defendant's motion to stay based on its inherent power to control its docket.

### B. Prejudice from Granting Stay

Plaintiff alleges that the putative classes would be harmed if a temporary and partial stay were granted because the *Carlos* Action seeks PAGA penalties and a reimbursement cause of action that are not asserted in the *Haro* Action. As an initial matter, Defendant does not seek a stay as to the reimbursement cause of action, so Plaintiff's argument is inapplicable. (*See* Motion at 1:19-20.) In addition, besides conclusory statements, Plaintiff does not provide any reasoning or support for why the PAGA claim related to the pre-shift COVID-19 screenings cannot be stayed pending the *Haro* Action. Indeed, this Court previously stayed Plaintiff's PAGA claim relating to the suitable seating claims pending the resolution of two state court cases, *Chen* and *Jacobi*. (Dkt. No. 44.) As such, the Court is unpersuaded by this argument.

Plaintiff also asserts that "[i]t would be reasonable to find that [Plaintiff's] interests, along with the putative class members'[interests], could certainly be harmed," because the lead attorneys in the *Haro* Action are admitted on a Pro Hac Vice status and the bulk of the claims at issue involve California labor laws. (Opp'n at 12:9-19.) This argument is speculative, at best, and thus, the Court finds it unpersuasive. The Court finds that any conceivable harm to Plaintiff and the putative classes in the *Carlos* Action would be minimal since the plaintiffs in the *Haro* Action would continue to litigate the overlapping claims, and there is no indication that plaintiffs' counsel in the *Haro* Action would be unable to litigate those claims efficiently and properly.

Plaintiff also argues Defendant would not be harmed because any delay has

been caused by its own doing. However, Defendant did not delay in bringing this motion as Plaintiff did not expand his allegations to overlap with those in the *Haro* Action until June 4, 2021 and September 3, 2021. (*Compare* Dkt. No. 34 at ¶ 14; Dkt No. 46 at ¶¶ 13-14, 26, 41-57 *with* Dkt. Nos. 1, 18, 23, 26.) Indeed, after Plaintiff filed the Fourth Amended Complaint in June 2021, Defendant filed a motion to dismiss, which the Court granted in part on August 13, 2021. (Dkt. No. 44.) Based on the Court's August 13, 2021 Order, Plaintiff filed a Fifth Amended Complaint on September 3, 2021. (Dkt. No. 46.) Prior to the filing of the Fourth and Fifth Amended Complaints, the allegations in the *Haro* Action and *Carlos* Action did not overlap. As such, the Court finds that Defendant would be prejudiced if a stay were not granted because it would have to defend itself against identical claims in two separate forums.

### C. Orderly Course of Justice

Plaintiff asserts that the orderly course of justice and the progression of the matters also do not warrant a temporary and partial stay because the *Carlos* Action is further along than the *Haro* Action. The Court is unpersuaded by Plaintiff's arguments.

First, Plaintiff asserts that the *Carlos* Action is further along based on the discovery conducted and the upcoming trial date. However, in the *Haro* Action, the parties have been engaged in discovery since May 2021, whereas the parties in the *Carlos* Action did not commence propounding discovery until July 2021. (Slowik Decl. ¶¶ 5, 7-8, Exs. E, F.) Indeed, the parties in the *Carlos* Action confirmed their delay in commencing discovery in their Joint Rule 26(f) Report, filed on June 25, 2021, when the parties noted that: "To date, the Parties have focused primarily on the pleadings and have not yet engaged in formal discovery." (Dkt. No. 36.)

Accordingly, not only was discovery regarding the overlapping theory of liability and cause of action commenced first in the *Haro* Action, but it has been ongoing for the past seven months.

Similarly, the June 7, 2022 trial date in the *Carlos* Action does not demonstrate that the *Carlos* Action is further along than the *Haro* Action. Indeed, this ignores the fact that in the *Carlos* Action, the parties initially requested a jury trial date of February 7, 2023 based on the "considerable time [the parties had expended] addressing the pleadings and [the pending] partial motion to dismiss." (Dkt. No. 36.) However, the Court set the June 7, 2022 jury trial date instead, in part, because the case had been pending in federal court since February 2021. In addition, in the *Haro* Action, the parties are already scheduled to argue their motion for class certification on June 1, 2022, whereas no hearing date has been set in the *Carlos* Action. Accordingly, the trial date in the *Carlos* Action does not demonstrate that litigation as a whole is further along than litigation in the *Haro* Action.

Second, Plaintiff asserts that the *Carlos* Action is further along because more individuals have consented to join his lawsuit as FLSA opt-in plaintiffs. However, Plaintiff did not file the Consent-to-Join Form until November 12, 2021, the same day Plaintiff filed his Opposition to the instant motion. (Dkt. No. 60; *see also* Dkt. No. 64.) In contrast, in the *Haro* Action, 111 individuals have filed consent forms to opt-in to the FLSA collective action since April 27, 2021. (Slowik Decl. ¶ 3, Ex. B.) As such, the Consent-to-Join Form in the *Carlos* Action were not filed until more than six months after the consent form was filed in the *Haro* Action, demonstrating that the *Carlos* Action is not further along. Moreover, Plaintiff's filing of the Consent-to-Join Forms demonstrates the necessity for a temporary and partial stay because at least two of the individuals who have opted-in to the *Carlos* Action have also opted-in to the *Haro* Action. (*Compare* Slowik Decl. ¶ 3, Ex. B at ¶¶ 11, 41 *with* Dkt. No. 60 at ¶¶ 15, 135.)

Last, considerations of the orderly course of justice and judicial economy look not only to the impact of a stay on the parties, but also on the resources of the Court. Here, neither party disputes that the FLSA claim in the *Haro* and *Carlos* Actions seek to represent the same non-exempt employees based on the same theory of liability

9.

(*i.e.*, undergoing pre-shift COVID-19 screenings). As such, if a stay were not implemented, two different courts would have to decide the same factual and legal questions, which would not be judicially efficient.

To summarize, on balance, the potential prejudice to Defendant that could result from conflicting rulings and usage of duplicative resources in two federal district courts outweighs any slight amount of potential prejudice Plaintiff may suffer from a temporary and partial stay.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Partial Stay. Accordingly, the following causes of action are **STAYED** pending the resolution of the *Haro* Action:

- First Cause of Action for Failure to Pay Overtime;
- Second Cause of Action for Failure to Pay Minimum Wage;
- Third Cause of Action for Failure to Pay Timely Wages Upon Termination;
- The portion of the Fifth Cause of Action for PAGA penalties as it relates to pre-shift COVID-19 screenings;
- Sixth Cause of Action for Violation of 29 U.S.C. § 206; and
- Seventh Cause of Action for Violation of 29 U.S.C. § 207.

Furthermore, the Court **ORDERS** the parties to file a joint report on the status of the *Haro* Action commencing on January 10, 2022, and every ninety (90) days thereafter until the stay is lifted, or within ten (10) days of the case being resolved.

**IT IS SO ORDERED.**

Dated: December 28, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

10.